### ARGUED AND DETERMINED

##### IN THE

# SUPREME JUDICIAL COURT

##### OF

# MASSACHUSETTS.

---

### COMMONWEALTH vs. LILY LAVONSAIR.

Hampshire.  Sept. 20, 1881. — Jan. 5, 1882.  LORD & DEVENS, JJ., absent.

A complaint, alleging that the defendant kept "a certain common nuisance, to wit, a certain house of ill fame," resorted to for the purpose of prostitution and lewdness, to the common nuisance of all citizens, charges an offence under the Gen. Sts. c. 165, § 13, and not under c. 87, §§ 6, 7.

COMPLAINT to a trial justice of Hampshire, alleging that the defendant, on August 20, 1880, " and on divers other days and times between that day and the twenty-fifth day of October in the same year, at Northampton, in said county, did keep and maintain a certain common nuisance, to wit, a certain house of ill fame, then and on said other days and times resorted to for the purpose of prostitution and lewdness, to the common nuisance of all the citizens of said Commonwealth there residing, inhabiting and passing, and against the peace of the Commonwealth and the form of the statute in such cases made and provided."

The record showed that the trial justice heard the matter of the complaint, adjudged the defendant guilty, and sentenced her to be committed to the reformatory prison for women for the term of one year; from which sentence she appealed to the Superior Court. In that court, she moved to quash the complaint and proceedings thereunder, on the ground that the court had

no jurisdiction of the offence charged, and that the trial justice took final jurisdiction of the case and sentenced the defendant wrongfully.

*Dewey*, J. overruled the motion; the jury returned a verdict of guilty; and the defendant alleged exceptions.

*C. Delano*, for the defendant.

*C. H. Barrows*, Assistant Attorney General, for the Commonwealth.

ALLEN, J. Before the enactment of the General Statutes, a keeper of a house of ill fame could be punished only under the St. of 1855, *c*. 405, which declared all buildings, places, or tenements used as houses of ill fame, resorted to for prostitution, lewdness, or for illegal gaming, &c., to be common nuisances, and prescribed penalties for the keepers of such nuisances, this statute having repealed by implication the Rev. Sts. *c*. 130, § 8, relating to houses of ill fame. The Gen. Sts. *c*. 87, § 6, reënacted the provision of the St. of 1855, *c*. 405, leaving out the words " used as houses, of ill fame," and also, in *c*. 165, § 13, revived the repealed provision of the Rev. Sts. *c*. 130, § 8; so that the two provisions, enacted at the same time, are as follows so far as relates to this case: " All buildings, places, or tenements, resorted to for prostitution, lewdness," &c. "shall be deemed common nuisances," and a penalty prescribed, not exceeding imprisonment for one year. *c*. 87, § 6. " Whoever keeps a house of ill fame, resorted to for the purpose of prostitution or lewdness, shall be punished " by not exceeding two years' imprisonment. *c*. 165, § 13.

It was said by this court in *Commonwealth* v. *Ballou*, 124 Mass. 26, that the keeper of a house of ill fame might be prosecuted under either statute. Trial justices have jurisdiction of offences under *c*. 87, but not of those under *c*. 165. In this case the trial justice took jurisdiction, and the question is whether the complaint is under *c*. 87 or under *c*. 165.

It is obvious that, under the law as stated in *Commonwealth* v. *Ballou*, every offence under *c*. 165 is an offence under *c*. 87, and can be prosecuted under that statute. It is equally obvious that the offences are not the same, and that every offence under *c*. 87 is not an offence under *c*. 165. Every " house of ill fame " is a " building, place or tenement," and therefore comes within

the definition of c. 87; but every "building, place, or tenement, resorted to," &c. is not a "house of ill fame," and therefore does not come within the definition of c. 165. This chapter contains an element that is not in c. 87, that is, that the building, place or tenement resorted to for the illegal purpose shall be a house of ill fame, and this element was deemed so important by the Legislature that it increased the penalty twofold. As the offences are different, the indictment or complaint must be so framed as to show for which a defendant is prosecuted. The same indictment cannot be held to be for either or both offences. It may include both; a defendant may be convicted of either under it; but it must be so framed that he may know the full charge he is to meet, and the penalty he is exposed to if convicted of the whole charge. An indictment properly framed under c. 165 can no more be treated as under c. 87, because it includes a formal charge of the offence under that chapter, than an indictment or complaint for murder can be treated as for manslaughter because that is formally charged in it.

The only difference between the two offences is that the one consists in keeping any place, the other in keeping a particular place, a house of ill fame resorted to for the illegal purpose. Both consist in keeping a place resorted to for the same purpose; both are common nuisances. The one is punished as a common nuisance, and therefore must be alleged to be such; the other is punished as a house of ill fame, and need not be alleged to be a common nuisance. This complaint, evidently framed upon the St. of 1855, c. 405, alleges that the defendant kept "a certain common nuisance, to wit, a certain house of ill fame," resorted to for the purpose of prostitution and lewdness, to the common nuisance of all citizens. The question is whether this properly charges an offence under c. 165. It contains the words which distinguish that offence, and those words are material and essential, and cannot be rejected as surplusage. Leaving out the words "common nuisance," and the connected words, the complaint clearly charges an offence under c. 165, and not under c. 87. Does the insertion of those words change the offence charged? The *videlicet* does not affect the construction of the complaint, because the words which come under it are material and essential, and the complaint cannot be sustained without them, while

the words "common nuisance" which precede it are wholly insufficient to charge any offence, and add no meaning to the complaint. The only office of an allegation of common nuisance under c. 87 is to characterize the particular act alleged, that is the keeping of a place resorted to for the unlawful purpose, and that office is fully performed by the allegation, after the statement of the act, that it was to the common nuisance. Generally, in indictments for nuisance, such words are necessary to affirm a fact characterizing the act charged; in a complaint under c. 87 they merely affirm an inference of law, and add nothing to the complaint which the law would not find there without them. Their real office in such a complaint is to satisfy a technical rule of criminal pleading. That rule does not require them to be used under c. 165; but it does not follow that their use will vitiate, or in any way affect, an indictment under that chapter. The material allegations of this complaint show an offence under c. 165. From them the law draws the inference that the place kept was a common nuisance, and that the keeping it was to the common nuisance of all citizens. It is not necessary to allege this in the indictment, but the statement of it, though made in both forms, cannot change the character or meaning of the act from which the inference is drawn. The averments are the same, and are immaterial, and can be rejected as surplusage, but unnecessary averments which are true in law in respect of the offence charged need not be rejected; they cannot affect the construction of the complaint.

In *Commonwealth* v. *Ballou, ubi supra,* the words of the indictment were "did keep and maintain a certain building, to wit, a dwelling-house, used as a house of ill fame, resorted to for prostitution, lewdness and for illegal gaming, and used for the illegal sale and keeping of intoxicating liquors, the said building, so used as aforesaid, being a common nuisance," and the court held that the words "used as a house of ill fame" could be rejected as surplusage, and that the remainder of the indictment properly charged an offence under c. 87. That decision cannot apply to this complaint, which contains words which properly charge the keeping of a house of ill fame, and which cannot be rejected.

Whether the defendant could have been convicted, under this complaint, of the offence described in c. 87, it is not material to

consider. She was found guilty by the justice of the full offence charged in the complaint, and upon the record is liable, if liable at all, to the full penalty of that; and that, we think, is the offence of keeping a house of ill fame under *c.* 165.

*Exceptions sustained.*